1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:  (323) 979-2063
5  Facsimile:  (323) 488-6748

6  Attorney for Plaintiff
   Beach District Surgery Center
7

8              UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT COURT OF CALIFORNIA

10

11
   Beach District Surgery Center          Case No.: 2:22-cv-01199-DSF-AGR
12
                 Plaintiff,               First Amended Complaint For:
13
       v.                                 1.  NEGLIGENT
14                                             MISREPRESENTATION; AND
   United Healthcare Services, Inc., and  2.  PROMISSORY ESTOPPEL
15 DOES 1-10,
                                          Or in the alternative-
16               Defendant.
                                          3.  RECOVERY OF BENEFITS
17                                            UNDER 29 U.S.C. §1132 (a)(1)(B)

18                                        **(Jury Trial Requested)**
                                          **Total Damages - $500,000.00**
19

20

21

22

23

24

25

26

27

28

                          Complaint

Plaintiff Beach District Surgery Center (hereinafter referred to as "PLAINTIFF" or "Medical Provider") complains and alleges:

## **PARTIES**

1.     Plaintiff, Medical Provider, is and at all relevant times was a medical corporation, organized and existing under the laws of the State of California. Medical Provider is and at all relevant times was in good standing under the laws of the State of California.

2.     United Healthcare Services, Inc. ("Defendant") is and was licensed to do business in and is and was doing business in the State of California. PLAINTIFF is informed and believes that Defendant is licensed to transact business in the State of California.  Defendant is, in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

3.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

4.     At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims;

COMPLAINT

1  approving or denying the claims; directing each other as to whether and/or how to
2  pay claims; issuing remittance advices and explanations of benefits statements;
3  making payments to Medical Provider and its Patients.

4  **GENERAL ALLEGATIONS**

5      5.    All of the claims asserted in this complaint are based upon the
6  individual and proper rights of Medical Provider in its own individual capacity and
7  are not derivative of the contractual or other rights of the Medical Provider's
8  Patient. A number of the claims asserted in this complaint arise out of the Medical
9  Provider's interactions with DEFENDANT and DOES 1 through 10, inclusive and
10 are derived from the representations and warranties made during those
11 conversations amongst those parties. Medical Provider does not in any way, seek to
12 enforce the contractual rights of the Medical Provider's Patients, through the
13 Patients' insurance contract, policies, certificates of coverage or other written
14 insurance agreements.

15     6.    This complaint arises out of the failure of DEFENDANT to make
16 proper payments and/or the underpayment to Medical Provider by DEFENDANT
17 and DOES 1 through 10, inclusive, of amounts due and owing now to Medical
18 Provider for surgical care, treatment and procedures provided to Patients, who are
19 insureds, members, policyholders, certificate-holders or were otherwise covered for
20 health, hospitalization and major medical insurance through policies or certificates
21 of insurance issued and underwritten by DEFENDANT and DOES 1 through 10,
22 inclusive.

23     7.    Medical Provider is informed and believes based on DEFENDANT's
24 oral and other representations that the Patient was an insured of DEFENDANT
25 either as a subscriber to coverage or a dependent of a subscriber to coverage under a
26 policy or certificate of insurance issued and underwritten by DEFENDANT and
27 DOES 1 through 10, inclusive, and each of them. Medical Provider is informed and
28 believes that the Patient entered into a valid insurance agreement with

- 3 -
COMPLAINT

1  DEFENDANT for the specific purpose of ensuring that the Patient would have
2  access to medically necessary treatments, care, procedures and surgeries by medical
3  practitioners like Medical Provider and ensuring that DEFENDANT would pay for
4  the health care expenses incurred by the Patient.

5      8.      Medical Provider is informed and believes that DEFENDANT and
6  DOES 1 through 10, inclusive, and each of them, received and continue to receive,
7  valuable premium payments from the Patient and/or other consideration from
8  Patient under the subject policies applicable to Patient.

9      9.      It is standard practice in the health care industry that when a medical
10 provider enters into a written preferred provider contract with a health plan such as
11 DEFENDANT, that a medical provider agrees to accept reimbursement that is
12 discounted from the medical provider's total billed charges in exchange for the
13 benefits of being a preferred or contracted provider.

14     10.     Those benefits include an increased volume of business, because the
15 health plan provides financial and other incentives to its members to receive their
16 medical care and treatments from the contracted provider, such as advertising that
17 the provider is "in network", and allowing the members to pay lower co-payments
18 and deductibles to obtain care and treatment from a contracted provider.

19     11.     Conversely, when a medical provider, such as Medical Provider, does
20 not have a written contract or preferred provider agreement with a health plan, the
21 medical provider receives no referrals from the health plan.

22     12.     The medical provider has no obligation to reduce its charges. The
23 health plan is not entitled to a discount from the medical provider's total bill charge
24 for the services rendered, because it is not providing the medical provider with in
25 network medical provider benefits, such as increased patient volume and direct
26 payment obligations.

27     13.     The reason why medical providers have chosen to forgo the benefits of
28 a contract with a payor is that, in recent years, many insurers including

- 4 -
COMPLAINT

1   DEFENDANT's contracted rates for in-network providers have been so meager,
2   one-sided and onerous, that many providers like Medical Provider have determined
3   that they cannot afford to enter into such contracts. As a result, a growing number
4   of medical providers have become non-contracted or out of network providers.

5        14.    Payors and insurers still want their patients to be seen and so they
6   commonly promise to pay out of network providers a percentage of the market rate
7   for the procedure, also described as, an average payment for the procedure
8   performed or provided by similarly situated medical providers within similarly
9   situated areas or places of practice. Rather than use the words market rate to
10  simplify terms, payors have long used words or combinations of words such as
11  usual, reasonable, customary and allowed, all to mean an average payment for a
12  procedure provided by similarly situated medical providers within similarly situated
13  areas or places of practice ("UCR").

14       15.    The United States government provides a definition for the term UCR.
15  "The amount paid for a medical service in a geographic area based on what
16  providers in the area usually charge for the same or similar medical service. The
17  UCR amount sometimes is used to determine the allowed amount."[1]

18       16.    Based upon these criteria, Medical Provider's charges are usual,
19  customary and reasonable.  Medical Provider charged DEFENDANT the same fees
20  that it charges all other payors.  Medical Provider's fees are comparable to the
21  prevailing provider rates in the geographic areas to the one in which the services
22  were provided.

23       17.    DEFENDANT uses the term UCR in their policies.

24

25  _____

26       [1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (October 3,
    2021), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/
27  (defining UCR)

28

18.     When DEFENDANTS uses the term UCR for the price of a medical service, DEFEDANT will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[2]

19.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT and it is available for free in a more limited fashion for use by consumers.[3]

20.     When a medical provider like PLAINTIFF is told that DEFENDANT will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

21.     In the alternative and separately, Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

22.     Medical Provider alleges that the Patients; health plans at issue in this litigation are health plans governed by the Employee Retirement Income Securities Act of 1974 ("ERISA").

---

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

[3] *See* fairhealthconsumer.org, (October 3, 2021), https://www.fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

COMPLAINT

23.     Prior to services being rendered, Medical Provider obtained an assignment from each Patient granting Medical Provider the right to step into the shoes of each Patient with respect to each Patient's rights under each Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for DEFENDANTS' failure to properly administer the terms of the ERISA Plan.

24.     For each Patient's claim, DEFENDANTS have waived or are estopped from asserting an anti-assignment provision were one even to exist. *See Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 437 (9th Cir. 2020).

25.     For the claims at issue in this suit, Medical Provider has spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

26.     Medical Provider sent out multiple appeal letters to DEFENDANT and any further appeals would be futile as Medical Provider has received letters stating that DEFENDANT's decision is final.

27.     In either case, Medical Provider has a reputation for providing high quality care and, as a result, Medical Provider brings this suit to obtain appropriate compensation for Medical Provider's services.

28.     For no less than 26 medical procedures, Medical Provider provided facilities for at least 13 Patients from 2019 through 2021 who held insurance through Defendant.

29.     Prior to providing services and in the case of each medical procedure, Medical Provider would contact Defendant to obtain representations and promises regarding the manner in which Defendant pays for medical services and the specific medical services at issue for each of the Patients.

30.     In each instance, Medical Provider would obtain and document the name of each person on the phone and the time and date of the call.

COMPLAINT

31.     In each instance, Medical Provider would obtain the specific amounts remaining for each Patient's deductible and max out of pocket expense ("MOOP").

32.     In each instance, Medical Provider would provide to Defendant the procedure codes that were at issue for each procedure and ask Defendant: in what manner do you pay for these procedures?

33.     In each instance, Defendant would respond that Defendant makes payment based on UCR.

34.     In each instance, Medical Provider would also ask for the specific procedure codes: does Defendant make payment based on Medicare?

35.     In each instance, Defendant would respond that Defendant does not make payment for the Patients and those procedure codes based on Medicare.

36.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

37.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

38.     DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

39.     Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

40.     Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

COMPLAINT

41.     MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

42.     Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at their word and promises and provided services based solely on those promises and representations.

43.     In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse each Patient and now Medical Provider in accordance with the terms of each Patient's health plan ("ERISA Plan").

44.     Each Patient provided to Medical Provider an assignment of their rights under the terms of each Patient's ERISA Plan.

45.     Following the provision of services to each Patient, Medical Provider submitted a bill or UB-04 to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

46.     At no point in time did DEFENDANT state that there was an anti-assignment provision in each Patient's ERISA Plan.

47.     Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of each Patient's and now Medical Provider's administrative remedies.

48.     Medical Provider was never informed during this process that each Patient's ERISA Plan had an anti-assignment provision and that DEFENDANT would only speak with each Patient.

49.     DEFENDANT has made clear that Medical Provider has no further administrative remedies.

COMPLAINT

50.     In all cases DEFENDANT refused to make any additional payment.

51.     Based on information and belief, Medical Provider asserts that under the terms of each Patient's ERISA Plan, DEFENDANT was obligated to remit payment in the amount of a percentage of Medical Provider's billed charge. Instead, DEFENDANT made payment to Medical Provider based on a Medicare fee schedule. As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan. Further, a review of each of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by each Patient.

52.     Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a total bill for all Patients of $696,976.75.

53.     Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

54.     DEFENDANT processed the bills and sent EOBs directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $186,632.34.

55.     The amount paid was a Medicare payment and was well below the billed amount owed under the terms of the ERISA Plan and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANT.

COMPLAINT

## SPECIFIC FACTS

### Patient A

56.    On December 10, 2020, Patient received a surgical procedure from Medical Provider.

57.    On November 24, 2020, so as to determine whether or not to provide services, Medical Provider's representative, R. Deleon spoke with DEFEDANT's representative, Oscar A., regarding the manner in which Medical Provider would be paid for services.

58.    The call reference number was 0791.

59.    Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

60.    Defendant represented to Medical Provider that Patient's deductible is and was $800.00 and Patient's MOOP expense is and was $5,000.00 and that to date for that calendar year Patient had paid $233.80.

61.    Medical Provider asked: does Defendant pay based on UCR for procedure codes 29881, and 29877 and other similar codes within the same family?

62.    Defendant represented to Medical Provider that for services in connection with procedure codes 29881, and 29877, Defendant pays the UCR rate.

63.    Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 29881, and 29877?

64.    Defendant represented to Medical Provider that for services in connection with procedure codes 29881, and 29877 Defendant's payment would not be based on the Medicare Fee Schedule.

65.    All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

66.    At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or

qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

67. DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

68. Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

69. Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

70. MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

71. Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

72. In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

73. On or about November 24, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

74.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

75.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

76.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

77.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

78.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

79.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

80.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

81.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

82.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $29,700.00.

83.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL

COMPLAINT

PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

84.　DEFENDANT processed the bill and made a payment $0.

85.　The amount paid was below Medical Provider's billed amount and below the UCR amount.

86.　As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**Patient B**

87.　On October 26, 2021, Patient received a surgical procedure from Medical Provider.

88.　On October 22, 2021, so as to determine whether or not to provide services, Medical Provider's representative, N. Escoto spoke with DEFEDANT's representative, regarding the manner in which Medical Provider would be paid for services.

89.　The call reference number was 2206244237.

90.　Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

91.　Defendant represented to Medical Provider that Patient's deductible is and was $800.00 and Patient's MOOP expense is and was $7,000.00 and that to date for that calendar year Patient had paid $800.00.

92.　Medical Provider asked: does Defendant pay based on UCR for procedure codes 64483, and 64484 and other similar codes within the same family?

93.　Defendant represented to Medical Provider that for services in connection with procedure codes 64483, and 64484, Defendant pays the UCR rate.

94.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 64483, and 64484?

95.     Defendant represented to Medical Provider that for services in connection with procedure codes 64483, and 64484 Defendant's payment would not be based on the Medicare Fee Schedule.

96.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

97.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

98.     DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

99.     Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

100.    Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

101.    MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

102.    Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but

- 15 -
COMPLAINT

that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

103.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

104.   On or about October 22, 2021, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

105.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

106.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

107.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

108.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

109.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

110.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

111.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

112.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by

COMPLAINT

1  failing to give a meaningful explanation within the EOB of the basis for
2  DEFENDANT's calculation and ultimate payment amount for the medical services
3  received by Patient.

4     113.   Under either scenario, following the procedure, Medical Provider
5  submitted to DEFENDANT any and all billing information required by
6  DEFENDANT, including a bill for $10,200.00.

7     114.   Following the procedure, MEDICAL PROVIDER submitted its claims
8  to DEFENDANT accompanied with lengthy operative reports, chart notes, and
9  other medical records. No matter whether large or small, all of MEDICAL
10 PROVIDER's claims were submitted to DEFENDANT using CPT codes,
11 Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as
12 necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing
13 information and any and all additional information requested by DEFENDANT.

14    115.   DEFENDANT processed the bill and made a payment $6,588.14.

15    116.   The amount paid was below Medical Provider's billed amount and
16 below the UCR amount.

17    117.   As of the date of this complaint, DEFENDANT has still refused to
18 make the appropriate payment to Medical Provider and Medical Provider is entitled
19 to that payment from DEFENDANT.

20                              **Patient C**

21    118.   On August 14, 2020, Patient received a surgical procedure from
22 Medical Provider.

23    119.   On August 10, 2020, so as to determine whether or not to provide
24 services, Medical Provider's representative, K. Ceja spoke with DEFEDANT's
25 representative, Alicia, regarding the manner in which Medical Provider would be
26 paid for services.

27    120.   The call reference number was 3491.

28

121.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

122.   Defendant represented to Medical Provider that Patient's deductible is and was $1,200.00 and Patient's MOOP expense is and was $4,000.00 and that to date for that calendar year Patient had paid $0.

123.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 30520, 30465 and 30140-50 and other similar codes within the same family?

124.   Defendant represented to Medical Provider that for services in connection with procedure codes 30520, 30465 and 30140-50, Defendant pays the UCR rate.

125.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 30520, 30465 and 30140-50?

126.   Defendant represented to Medical Provider that for services in connection with procedure codes 30520, 30465 and 30140-50 Defendant's payment would not be based on the Medicare Fee Schedule.

127.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

128.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

129.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

COMPLAINT

130.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

131.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

132.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

133.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

134.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

135.   On or about August 10, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

136.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

137.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

138.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

139.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

140.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

141.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

142.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

143.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

144.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $55,620.00.

145.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

146.   DEFENDANT processed the bill and made a payment $17,415.66.

147.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

148.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

## **Patient D**

149.   On May 11, 2020, Patient received a surgical procedure from Medical Provider.

150.   On May 7, 2020, so as to determine whether or not to provide services, Medical Provider's representative, K Ceja spoke with DEFEDANT's representative, Sam, regarding the manner in which Medical Provider would be paid for services.

151.   The call reference number was 20050700013782.

152.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

153.   Defendant represented to Medical Provider that Patient's deductible is and was $1,000.00 and Patient's MOOP expense is and was $6,000.00 and that to date for that calendar year Patient had paid $181.63.

154.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 42826 and other similar codes within the same family?

155.   Defendant represented to Medical Provider that for services in connection with procedure code 42826, Defendant pays the UCR rate.

156.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure code 42826?

157.   Defendant represented to Medical Provider that for services in connection with procedure code 42826 Defendant's payment would not be based on the Medicare Fee Schedule.

COMPLAINT

158.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

159.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

160.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

161.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

162.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

163.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

164.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

COMPLAINT

165.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

166.   On or about May 7, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

167.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

168.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

169.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

170.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

171.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

172.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

173.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

174.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

COMPLAINT

175.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $20,130.00.

176.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

177.    DEFENDANT processed the bill and made a payment $2,784.33.

178.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

179.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

## **Patient E**

180.   On December 22, 2020, Patient received a surgical procedure from Medical Provider.

181.   On December 17, 2020, so as to determine whether or not to provide services, Medical Provider's representative, R. Deleon, spoke with DEFEDANT's representative, Emmanuel D., regarding the manner in which Medical Provider would be paid for services.

182.   The call reference number was 4280.

183.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

184.   Defendant represented to Medical Provider that Patient's deductible is and was $6,000.00 and Patient's MOOP expense is and was $14,000.00 and that to date for that calendar year Patient had paid $2,612.86.

185.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 29881 and other similar codes within the same family?

186.   Defendant represented to Medical Provider that for services in connection with procedure codes 29881, Defendant pays the UCR rate.

187.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 29881?

188.   Defendant represented to Medical Provider that for services in connection with procedure codes 29881 Defendant's payment would not be based on the Medicare Fee Schedule.

189.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

190.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

191.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

192.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

193.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

COMPLAINT

194.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

195.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

196.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

197.   On or about December 17, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

198.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

199.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

200.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

201.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

COMPLAINT

202.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

203.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

204.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

205.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

206.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $29,700.00.

207.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

208.    DEFENDANT processed the bill and made a payment $4,066.90.

209.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

210.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**Patient F**

COMPLAINT

211.   On August 26, 2019, Patient received a surgical procedure from Medical Provider.

212.   On November 24, 2020, so as to determine whether or not to provide services, Medical Provider's representative, K. Ceja, spoke with DEFENDANT's representative, Grace, regarding the manner in which Medical Provider would be paid for services.

213.   The call reference number was 9200.

214.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

215.   Defendant represented to Medical Provider that Patient's deductible is and was $5,000.00 and Patient's MOOP expense is and was $6,000.00 and that to date for that calendar year Patient had paid $1,296.50.

216.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 63650, and 63650-59 and other similar codes within the same family?

217.   Defendant represented to Medical Provider that for services in connection with procedure codes 63650, and 63650-59, Defendant pays the UCR rate.

218.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 63650, and 63650-59?

219.   Defendant represented to Medical Provider that for services in connection with procedure codes 63650, and 63650-59 Defendant's payment would not be based on the Medicare Fee Schedule.

220.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

221.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or

COMPLAINT

qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

222.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

223.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

224.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

225.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

226.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

227.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

228.   On or about August 21, 2019, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

COMPLAINT

229.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

230.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

231.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

232.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

233.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

234.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

235.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

236.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

237.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $49,575.00.

238.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL

COMPLAINT

PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

239.   DEFENDANT processed the bill and made a payment $23,846.75.

240.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

241.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**Patient G**

242.   On July 10, 2020, Patient received a surgical procedure from Medical Provider.

243.   On June 11, 2020, so as to determine whether or not to provide services, Medical Provider's representative, K. Ceja spoke with DEFEDANT's representative, Lee, regarding the manner in which Medical Provider would be paid for services.

244.   The call reference number was 7511.

245.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

246.   Defendant represented to Medical Provider that Patient's deductible is and was $1,200.00 and Patient's MOOP expense is and was $4,000.00 and that to date for that calendar year Patient had paid $1,200.00.

247.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 30520, 30140-50, 30130-50 and 30465 and other similar codes within the same family?

248.  Defendant represented to Medical Provider that for services in connection with procedure codes 30520, 30140-50, 30130-50 and 30465, Defendant pays the UCR rate.

249.  Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 30520, 30140-50, 30130-50 and 30465?

250.  Defendant represented to Medical Provider that for services in connection with procedure codes 30520, 30140-50, 30130-50 and 30465 Defendant's payment would not be based on the Medicare Fee Schedule.

251.  All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

252.  At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

253.  DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

254.  Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

255.  Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

256.  MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

257.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

258.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

259.   On or about June 11, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

260.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

261.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

262.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

263.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

264.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

265.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

COMPLAINT

266.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

267.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

268.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $52,365.00.

269.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

270.   DEFENDANT processed the bill and made a payment $19,389.55.

271.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

272.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**Patient H**

273.   On June 9, 2020, Patient received a surgical procedure from Medical Provider.

274.   On June 3, 2020, so as to determine whether or not to provide services, Medical Provider's representative, K. Ceja spoke with DEFEDANT's

COMPLAINT

representative, Scarlett, regarding the manner in which Medical Provider would be paid for services.

275.   The call reference number was 9768.

276.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

277.   Defendant represented to Medical Provider that Patient's deductible is and was $9,200.00 and Patient's MOOP expense is and was $11,000.00 and that to date for that calendar year Patient had paid $0.

278.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 28120 and other similar codes within the same family?

279.   Defendant represented to Medical Provider that for services in connection with procedure codes 28120, Defendant pays the UCR rate.

280.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 28120?

281.   Defendant represented to Medical Provider that for services in connection with procedure codes 28120 Defendant's payment would not be based on the Medicare Fee Schedule.

282.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

283.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

284.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

COMPLAINT

285.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

286.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

287.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

288.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

289.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

290.   On or about June 3, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

291.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

292.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

293.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

294.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

295.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

296.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

297.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

298.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

299.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $29,700.00.

300.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

301.   DEFENDANT processed the bill and made a payment $251.21.

302.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

303.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

### Patient I

304.   On April 7, 2020, Patient received a surgical procedure from Medical Provider.

305.   On April 6, 2020, so as to determine whether or not to provide services, Medical Provider's representative, V. Collier spoke with DEFEDANT's representative, Jasmine, regarding the manner in which Medical Provider would be paid for services.

306.   The call reference number was 9871.

307.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

308.   Defendant represented to Medical Provider that Patient's deductible is and was $1,200.00 and Patient's MOOP expense is and was $4,000.00 and that to date for that calendar year Patient had paid $0.

309.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 25605, 25607, and 29125 and other similar codes within the same family?

310.   Defendant represented to Medical Provider that for services in connection with procedure codes 25605, 25607, and 29125, Defendant pays the UCR rate.

311.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 25605, 25607, and 29125?

COMPLAINT

312.   Defendant represented to Medical Provider that for services in connection with procedure codes 25605, 25607, and 29125 Defendant's payment would not be based on the Medicare Fee Schedule.

313.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

314.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

315.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

316.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

317.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

318.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

319.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical

services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

320.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

321.   On or about April 6, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

322.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

323.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

324.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

325.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

326.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

327.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

328.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

329.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for

COMPLAINT

1   DEFENDANT's calculation and ultimate payment amount for the medical services

2   received by Patient.

3       330.   Under either scenario, following the procedure, Medical Provider

4   submitted to DEFENDANT any and all billing information required by

5   DEFENDANT, including a bill for $29,724.75.

6       331.   Following the procedure, MEDICAL PROVIDER submitted its claims

7   to DEFENDANT accompanied with lengthy operative reports, chart notes, and

8   other medical records. No matter whether large or small, all of MEDICAL

9   PROVIDER's claims were submitted to DEFENDANT using CPT codes,

10  Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as

11  necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing

12  information and any and all additional information requested by DEFENDANT.

13      332.   DEFENDANT processed the bill and made a payment $141.55.

14      333.   The amount paid was below Medical Provider's billed amount and

15  below the UCR amount.

16      334.   As of the date of this complaint, DEFENDANT has still refused to

17  make the appropriate payment to Medical Provider and Medical Provider is entitled

18  to that payment from DEFENDANT.

19                          **Patient J**

20      335.   On August 26, 2019, Patient received a surgical procedure from

21  Medical Provider.

22      336.   On November 24, 2020, so as to determine whether or not to provide

23  services, Medical Provider's representative, K. Ceja spoke with DEFEDANT's

24  representative, Sophie, regarding the manner in which Medical Provider would be

25  paid for services.

26      337.   The call reference number was 8057.

27      338.   Medical Provider asked: what is the Patient's responsibility versus

28  Defendant's responsibility for paying for medical services?

339.   Defendant represented to Medical Provider that Patient's deductible is and was $1,000.00 and Patient's MOOP expense is and was $5,600.00 and that to date for that calendar year Patient had paid $608.71.

340.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 27659, and 27695 and other similar codes within the same family?

341.   Defendant represented to Medical Provider that for services in connection with procedure codes 27659, and 27695, Defendant pays the UCR rate.

342.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 27659, and 27695?

343.   Defendant represented to Medical Provider that for services in connection with procedure codes 27659, and 27695 Defendant's payment would not be based on the Medicare Fee Schedule.

344.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

345.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

346.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

347.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

348.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

349.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

350.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

351.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

352.   On or about August 23, 2019, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

353.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

354.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

355.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

356.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

357.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

358.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

359.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

360.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

361.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $29,700.00.

362.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

363.    DEFENDANT processed the bill and made a payment $6,883.25.

364.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

365.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**Patient K**

366.   On September 3, 2019 and November 26, 2019, Patient received a surgical procedure from Medical Provider.

367.   On August 29, 2019 and November 20, 2019, so as to determine whether or not to provide services, Medical Provider's representative, K. Ceja spoke with DEFEDANT's representatives, Ariel and Jennifer, regarding the manner in which Medical Provider would be paid for services.

368.   The call reference number for each call was 2331, and 7699.

369.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

370.   Defendant represented to Medical Provider that Patient's deductible is and was $3,750.00 and Patient's MOOP expense is and was $7,500.00 and that to date for that calendar year Patient had paid $0.

371.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 28297, 58563 and 29898 and other similar codes within the same family?

372.   Defendant represented to Medical Provider that for services in connection with procedure codes 28297, 58563 and 29898, Defendant pays the UCR rate.

373.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 28297, 58563 and 29898?

374.   Defendant represented to Medical Provider that for services in connection with procedure codes 28297, 58563 and 29898 Defendant's payment would not be based on the Medicare Fee Schedule.

375.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

376.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or

- 45 -
COMPLAINT

qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

377.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

378.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

379.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

380.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

381.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

382.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

383.   On or about August 29, 2019, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

384.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

385.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

386.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

387.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

388.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

389.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

390.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

391.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

392.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a total bill for $60,169.50.

393.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL

PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

394.   DEFENDANT processed the bill and made a payment $30,935.02. Defendant stated that the basis for the amount it paid was an agreement that Medical Provider had with a third party contracting network called Multiplan. However, Defendant did not actually pay Medical Provider in accordance with Medical Provider's Multiplan contract as Medical Provider is owed 93% of its billed charge based on Medical Provider's Multiplan contract.

395.   The amount paid was below Medical Provider's billed amount, Medical Provider's Multiplan contract and below the UCR amount.

396.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**Patient L**

397.   On March 18, 2020, Patient received a surgical procedure from Medical Provider.

398.   On March 10, 2020, so as to determine whether or not to provide services, Medical Provider's representative, N. Espinoza spoke with DEFEDANT's representative, Tony, regarding the manner in which Medical Provider would be paid for services.

399.   The call reference number was 6815.

400.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

401.   Defendant represented to Medical Provider that Patient's deductible is and was $1,000.00 and Patient's MOOP expense is and was $5,000.00 and that to date for that calendar year Patient had paid $693.31.

COMPLAINT

402.   Medical Provider asked: does Defendant pay based on UCR for procedure codes 49585, and 49568 and other similar codes within the same family?

403.   Defendant represented to Medical Provider that for services in connection with procedure codes 49585, and 49568, Defendant pays the UCR rate.

404.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 49585, and 49568?

405.   Defendant represented to Medical Provider that for services in connection with procedure codes 49585, and 49568 Defendant's payment would not be based on the Medicare Fee Schedule.

406.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

407.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

408.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

409.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

410.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

411.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

COMPLAINT

412.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

413.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

414.   On or about March 10, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

415.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

416.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

417.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

418.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

419.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

420.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

COMPLAINT

421. As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

422. Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

423. Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $42,595.00.

424. Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

425. DEFENDANT processed the bill and made a payment $2,138.65.

426. The amount paid was below Medical Provider's billed amount and below the UCR amount.

427. As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

## Patient M

428. On October 24, 2019, August 14, 2020, August 28, 2020, September 11, 2020, September 25, 2020, November 6, 2020, December 4, 2020, January 29, 2021, April 16, 2021, June 4, 2021, July 2, 2021, July 16, 2021, and August 27, 2021 Patient received a surgical procedure from Medical Provider.

429.   Within a week, prior to each procedure, so as to determine whether or not to provide services, Medical Provider's representative spoke with DEFEDANT's representative, regarding the manner in which Medical Provider would be paid for services.

430.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

431.   Defendant represented to Medical Provider that Patient's deductible is and was $1,000.00 and Patient's MOOP expense is and was $5,000.00.

432.   Medical Provider asked: does Defendant pay based on UCR for the specific procedure codes representing the procedures to be provided?

433.   Defendant represented to Medical Provider that for services in connection with the procedures Defendant pays the UCR rate.

434.   Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for the procedures?

435.   Defendant represented to Medical Provider that for services in connection with the procedures Defendant's payment would not be based on the Medicare Fee Schedule.

436.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

437.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

438.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

COMPLAINT

439.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

440.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

441.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

442.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

443.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

444.   On or about October 22, 2019, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

445.   Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANTS which stated that Medical Provider had received an assignment from the Patient.

446.   At no point in time did DEFENDANT state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

447.   Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

448.   Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

449.   According to Patient's Plan, Defendant was obligated to pay Medical Provider at the based on Plaintiff's billed charge.

450.   Instead, Medical Provider asserts that Defendant made payment based on the Medicare Fee Schedule.

451.   As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

452.   Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

453.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a total bill for $300,392.50.

454.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

455.   DEFENDANT processed the bill and made a payment $66,921.06.

456.   The amount paid was below Medical Provider's billed amount and below the UCR amount.

457.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

## FIRST CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

1.   Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

2.   DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

3.   DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

4.   DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

5.   Medical Provider then relied on DEFENDANT's misrepresentation and provided the services to Patients.

6.   DEFENDANT made payment based on a Medicare rate not a UCR rate.

7.   Medical Provider has been damaged in not receiving payment at the represented UCR rate.

## SECOND CAUSE OF ACTION
## PROMISSORY ESTOPPEL

8.   Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

9.   DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered,

1    authorized, certified and would be paid for at the  UCR rate and not based on

2    Medicare.

3         10.    Medical Provider only decided to provide services because they were

4    assured that payment would be made at the UCR rate not based on Medicare.

5         11.    After assuring and promising Medical Provider that payment would be

6    at the UCR rate, DEFENDANT should have reasonably expected that Medical

7    Provider would then go on to provide medical services expecting that payment

8    would be made at that rate.

9         12.    Medical Provider did rely on the statements, assertions and promises

10   of DEFENDANT and provided the medical services to the Patients.

11        13.    DEFENDANT made payment based on a Medicare rate not a UCR

12   rate.

13        14.    As a direct and proximate result of DEFENDANT's

14   misrepresentations, Medical Provider has been damaged in an amount equal to the

15   amount of money Medical Provider should have received had DEFENDANT paid

16   the UCR rate.

17        15.    The detriment suffered by Medical Provider is the amount required to

18   make Medical Provider whole, for the time, cost and money expended in providing

19   medical services to Patients.  As a further direct, legal and proximate result of

20   Medical Provider's detrimental reliance on the oral agreement and the

21   misrepresentations of defendants, and each of them, Medical Provider has been

22   damaged due to the loss of monies expended in providing said medical services for

23   which it was significantly underpaid and has suffered damages in the loss of use of

24   the proceeds and income to be derived from the medical services.

25        16.    In light of the material representations and misrepresentations of

26   DEFENDANT made to Medical Provider, and of Medical Provider's reliance on

27   the oral agreement, and oral representations made by DEFENDANT and each of

28   them, and based upon Medical Provider's detrimental reliance thereon,

COMPLAINT

DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatment at the UCR rate. An amount to be determined at the time of trial.

## THIRD CAUSE OF ACTION
## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

17.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

18.     This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

19.     Medical Provider seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider has standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider is a "beneficiary" entitled to collect benefits, and is the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANTS the parties with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

20.     DEFENDANT was a direct participant in the claims administration process,

21.     By reason of the foregoing, Medical Provider is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Medical Provider seeks recovery of such benefits by way of the present action.

///

///

///

1   ///

2   ///

3   ///

4   ///

5   ///

6   ///

7   ///

8   ///

9   ///

10                      **PRAYER FOR RELIEF**

11          **WHEREFORE,** Beach District Surgery Center prays for judgment against

12   defendants as follows:

13          1.      For compensatory damages in an amount to be determined, plus

14   statutory interest;

15          2.      For restitution in an amount to be determined, plus statutory interest;

16          3.      For a declaration that DEFENDANT is obligated to pay plaintiff all

17   monies owed for services rendered to the Patient; and

18          4.      For such other relief as the Court deems just and appropriate

19   .

20   Dated: May 25, 2022                LAW OFFICE OF JONATHAN A.
                                        STIEGLITZ
21

22                                      By: /s/ Jonathan A. Stieglitz
                                            JONATHAN A. STIEGLITZ
23                                          Beach District Surgery Center

24

25

26                     **DEMAND FOR JURY TRIAL**

27          Plaintiff, Beach District Surgery Center, hereby demands a jury trial as

28

COMPLAINT

1  provided by law.

2

3  Dated: May 25, 2022                    LAW OFFICE OF JONATHAN A.
                                          STIEGLITZ
4

5                                         By: /s/ Jonathan A. Stieglitz
                                             JONATHAN A. STIEGLITZ
6                                            Attorneys for Plaintiff,
                                             Beach District Surgery Center
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT